IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| RICKY SMITH, | ) |
| Petitioner, | ) CIVIL ACTION NO.: CV514-008 |
| v. | ) |
| UNITED STATES OF AMERICA, | ) (Case No.: CR510-22) |
| Respondent. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Ricky Smith ("Movant"), who is currently incarcerated at the Federal Correctional Institution in Edgefield, South Carolina, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government filed a Response. The undersigned appointed counsel for Movant and conducted a hearing on his motion on April 22, 2014. Movant, through counsel, filed a post-hearing brief, as did the Government. For the reasons which follow, Movant's motion should be **DENIED**.

## STATEMENT OF THE CASE

Movant was convicted, after pleading guilty, of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Movant was sentenced as an armed career criminal based on three (3) prior convictions he obtained in state court. The Honorable William T. Moore, Jr., sentenced Movant to 170 months' imprisonment, and judgment was entered on September 1, 2011. Movant did not file an appeal.

In this motion, Movant contends that he directed his trial counsel, Edward Smith ("attorney Smith") to file a notice of appeal, and attorney Smith failed to do so. Movant also contends that he should not have been sentenced under the Armed Career Criminal Act ("ACCA") because his Georgia burglary conviction is no longer a qualifying predicate offense. Movant asserts that this Court violated his right to a jury finding of the element necessary to increase his punishment beyond the statutory minimum.

The Government asserts that Movant's motion is untimely. The Government alleges that Movant's burglary conviction is a predicate offense under the ACCA, even if he had not procedurally defaulted on this claim. The Government also alleges that Movant's Sixth Amendment claim is without merit.

## DISCUSSION AND CITATION TO AUTHORITY

**I. Whether attorney Smith rendered ineffective assistance of counsel regarding an appeal**

Movant contends that he informed attorney Smith that he wanted to file an appeal, but he learned in October 2013 that no appeal was pending. Movant asserts that he discussed with attorney Smith the possibilities for success on appeal and that attorney Smith told him there was no need to file an appeal because it would be useless. Movant also asserts that he told attorney Smith that his life was on the line, and he was the one who had to serve time. Movant alleges that he had no idea an appeal had not been filed and only learned of this by contacting the Court. Movant avers that he attempted to contact attorney Smith but was unsuccessful. The Government alleges that attorney Smith's testimony at the evidentiary hearing reveals that Movant did not ask or direct attorney Smith to file an appeal on his behalf.

Criminal defendants have a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685–86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).

A defendant can file a direct appeal of his federal conviction as a matter of right. Thompson v. United States, 504 F.3d 1203, 1206–07 (11th Cir. 2007). A "lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). The Eleventh Circuit Court of Appeals "has interpreted Flores-Ortega to mean that it is per se unreasonable to fail to follow a client's explicit request to file an appeal." Gomez-Diaz v. United States, 433 F.3d 788, 791–92 (11th Cir. 2005). Even if a client has not made a specific request of his attorney to file an appeal, "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. Factors used "in determining whether a rational defendant would want to appeal include whether the conviction

3

follows a guilty plea, whether the defendant received the sentence bargained for as part of a plea agreement, whether the plea agreement waived appellate rights, and whether there are nonfrivolous grounds for appeal." Fields v. United States, No. 12-15784, 2014 WL 4056302, at *3 (11th Cir. Aug. 18, 2014) (citing Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007)).

The denial of counsel on appeal, and more seriously, the denial of an appeal altogether as a result of ineffective assistance of counsel, deprive the accused of counsel at a "critical stage" and therefore carry a presumption of prejudice. Id. at 483. However, "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." Id. at 484. Thus, to invoke the presumption of prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. "When counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. A pro se defendant is not required to show that his appeal has any arguably meritorious grounds for appeal; all that is required is for the "defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed." Ashcraft v. Sec'y, Fla. Dep't of Corr., 340 F. App'x 600, 602 (11th Cir. 2009). "The duty to consult includes two obligations: to advise the client 'about the advantages and disadvantages of taking an appeal,' and to make a 'reasonable effort to discover' whether the client wants to appeal." Baughman v. United States, 319 F. App'x 866, 869 (11th Cir. 2009) (internal citation omitted).

AO 72A
(Rev. 8/82)

Attorney Smith testified that Movant was facing a minimum sentence of fifteen (15) years' imprisonment because he was going to be classified as an armed career criminal. (Doc. No. 12, p. 5). Movant ultimately received a sentence of around fourteen (14) years' imprisonment (170 months) after he cooperated with the Government by providing information which assisted in other criminal matters. Attorney Smith testified that he met with Movant approximately 15 times throughout the course of the criminal prosecution, and they "got to know each other pretty well." (Id. at p. 9). Attorney Smith stated that he and Movant discussed the possibility of appealing Movant's sentence on the date of the sentencing. Attorney Smith testified that he asked Movant, "What do you want to do? We have limited time. Do you want me to appeal it? What do you want me to do?". (Id.) Attorney Smith also testified that Movant replied, "Don't worry, Mr. Smith. . . I'm a convict. I'm not an inmate. This is my retirement. I've never been to federal prison. It'll be meat on the bone," and laughed. (Id.). Attorney Smith declared that he took Movant's response to mean that he did not want him to file an appeal, even though Movant did not specifically use those words. Attorney Smith testified that he told Movant to contact him with any questions. Attorney Smith stated that he did not hear from Movant within thirty (30) days after sentencing regarding an appeal, and the first time he heard from Movant after sentencing was on June 5, 2013. (Id. at p. 10). Attorney Smith stated that he spoke to Movant, and Movant wanted copies of every document from the criminal proceedings attorney Smith had. Attorney Smith testified that he had a letter dated June 7, 2013, which indicated that his secretary sent Movant these copies on that date. (Id.). Attorney Smith also testified that Movant did not ask him to file an appeal or ask about the status of an appeal at this time. (Id. at p. 11).

AO 72A
(Rev. 8/82)

However, attorney Smith stated that he did not see any reason to file an appeal, as it did not look like an appeal would have gone anywhere.

On cross-examination, attorney Smith declared that, although he had nothing documenting Movant's failure to ask him to file an appeal, he (attorney Smith) did not "recall him ever saying anything about filing an appeal." (Id. at p. 20). Attorney Smith stated that he would have remembered if Movant had asked for an appeal because of the limited time period available in which to file an appeal. Attorney Smith also stated that he remembered the conversation he had with Movant after sentencing better than he would have ordinarily remembered a conversation because he was "floored" by Movant's comments. (Id. at p. 21). Attorney Smith further stated that he told Movant if he changed his mind about filing an appeal or if he needed attorney Smith, to contact him. Attorney Smith continued by stating that he took Movant's comments to mean that he was okay with his sentence and did not want to appeal it. Attorney Smith testified that he told Movant that he would have to let attorney Smith know something "pretty quick[ ]"(sic), presumably because of the limited time available for the filing of an appeal. (Id.). Attorney Smith declared that his understanding is "that if [he doesn't] see any grounds for appeal and my client doesn't indicate that he wants to appeal, that I don't file an appeal at that point. I didn't see any reason to file an appeal." (Id. at p. 25).

In contrast, Movant testified that he told attorney Smith to file an appeal because he thought the sentence he received was unfair. (Id. at pp. 33–34). Movant also testified that he "really did" believe that attorney Smith filed an appeal on his behalf. (Id. at p. 34). Movant stated that he began speaking with fellow inmates while he was housed at the Federal Correctional Institution in Estill, South Carolina, one of whom

encouraged him to contact attorney Smith after learning when Movant was sentenced. Movant declared that he contacted attorney Smith, who told Movant that he (attorney Smith) was "through with" his case. (Id. at p. 35). Movant also declared that he asked attorney Smith to send him his documents. Movant further declared that he found it difficult to get in touch with attorney Smith, which delayed his receipt of his documents. Movant testified that he received his documents in November 2013, and it was around that time he learned that no appeal had been filed.

The undersigned finds the testimony given by attorney Smith at the evidentiary hearing more credible than that given by Movant. Davis v. United States, 404 F. App'x 336, 338 (11th Cir. 2010) (stating that the determination of the credibility of a testifying attorney during an evidentiary hearing on an ineffective assistance claim is within the province of the district court, which has the opportunity to observe and study the witness). The undersigned finds that Movant advised attorney Smith that he did not want to file an appeal, particularly in light of attorney Smith's testimony that his conversation with Movant after sentencing stood out in his mind because he thought Movant's comments were unusual. In addition, Movant was unable to pinpoint an exact time period for when he learned no appeal had been filed, and instead, he has identified several different times as being when he learned he did not have a pending appeal. Next, it must be determined whether a "reasonable defendant" in Movant's place would have wanted to file an appeal.

The two most relevant factors to consider in this determination is that Movant pled guilty to the charged offense and that he actually received a more favorable sentence than for what he bargained. Movant entered into a plea agreement with the

AO 72A
(Rev. 8/82)

Government. As part of this agreement, Movant was notified that his penalty for pleading guilty to the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), would be "not less than 15 years['] imprisonment[ ]" because he had "3 qualifying convictions[.]" (CR510-22, Doc. No. 50, p. 1). Movant was also notified that the United States Probation Office would prepare a Presentence Investigation Report ("PSI"), which would include Movant's criminal history, for the Court's consideration during sentencing. (Id. at p. 6). Judge Moore informed Movant during his Rule 11, or change of plea hearing, that it was a possibility "if you plead guilty today you are going to forever lose your right to complain on appeal about any action of the government, any government agent, prosecutor, the Magistrate judge, your own lawyer, this Court, or anyone else as far as any complaint that you have about anything that you say they did or failed to do in your case." (Id. at Doc. No. 72, pp. 10–11). Movant told Judge Moore that he understood. Judge Moore noted the charge against Movant and that, by pleading guilty, he faced, "as a person with three qualifying convictions", "a sentence of not less than 15 years of imprisonment[.]" (Id. at p. 14). Movant told Judge Moore that attorney Smith told him that he faced "15 years to life." (Id.). Judge Moore explained to Movant that the Sentencing Guidelines are advisory in nature and that, even if the sentence he received were more than he or attorney Smith anticipated, Movant was bound by his plea agreement. Movant told Judge Moore that, other than what was contained in the plea agreement, he had no promises made to him and that attorney Smith did not tell him the exact sentence which would be imposed. (Id. at pp. 18–19). Judge Moore found that Movant's guilty plea was made voluntarily with an understanding of the charges and consequences of his plea. (Id. at p. 20). Judge

8

Moore considered attorney Smith's objections to the PSI during the sentencing hearing and sustained two (2) of these objections, leaving Movant to face a sentence of 180 to 210 months' imprisonment under the Guidelines. (CR510-22, Doc. No. 59, pp. 7, 9). Judge Moore sentenced Movant to 170 months' imprisonment, which was below the Guidelines range and the statutory minimum sentence Movant faced. (Id. at p. 11).

The undersigned notes that Movant did not waive his appellate rights as part of his plea agreement. The undersigned also notes that Movant's proffered claims for appellate relief likely would be frivolous. Movant's proffered appellate claims regarding the ACCA will be discussed in Section III of this Report. As for Movant's claim that he signed an affidavit in support of his motion to suppress while he was on psychotropic drugs, this claim would likely fail. Movant signed his affidavit on November 12, 2010, and his motion was filed on November 15, 2010. (CR510-22, Doc. Nos. 18, 18-3). However, Movant testified under oath before Judge Moore that he had not taken any drugs or medication since approximately May 2010. (Id. at Doc. No. 72, p. 7). Either Movant was being untruthful with Judge Moore, or he is being untruthful with the Court now. In any event, Movant's assertions in this regard clearly are contradicted by the record in this case. The undersigned finds that attorney Smith had no duty to consult with Movant about filing an appeal, as no reasonable defendant would want to file an appeal under the same circumstances. Attorney Smith did not render ineffective assistance of counsel, and Movant should not be permitted to file an out-of-time appeal.

AO 72A
(Rev. 8/82)

## II. Timeliness of the § 2255 motion[1]

Movant contends that he was diligent in pursuing his appellate rights. Movant contends that he was not given his file, which indicated that an appeal was not filed. Movant also contends that, when he "decided to check on his appeal, he was told he did not have one[ ]" pending. (Doc. No. 13, p. 18). Movant asserts that he made "several attempts" to get his file and was not given his entire file until the day of the habeas hearing. (Id.). Movant alleges that he made numerous calls to attorney Smith's office, "the dates of which are unclear[.]" (Id.). Movant also alleges that he did not receive his transcript until November 2013. Finally, Movant alleges that he filed this motion within one (1) year of learning that he had no pending appeal on February 13, 2013.

The Government contend that Movant's motion is untimely, and he cannot avail himself to the one-year statute of limitations period found in 28 U.S.C. § 2255(f)(4). The Government asserts that this limitations period starts when a litigant could have discovered the facts underlying his claims through due diligence. The Government also asserts that Movant waited at least fifteen (15) months from the time of his sentencing in September 2011 before attempting to learn whether he had an appeal pending.

Motions made pursuant to 28 U.S.C. § 2255 are subject to a statute of limitations period. This limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

---

[1] The undersigned rejects any assertion Movant makes on the basis of requesting an appeal on the date of sentencing and not receiving one, as noted in Section I of this Report. Instead, the undersigned's focus in this Section will be on whether Movant is entitled to the benefit of the statute of limitations period found at § 2255(f)(4) or equitable tolling.

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Movant was sentenced on August 29, 2011, and judgment was entered on September 1, 2011. (CR510-22, Doc. Nos. 49, 51). Movant had fourteen (14) days, or until September 15, 2011, to file a notice of appeal. FED. R. APP. P. 4(b)(1)(A)(i); FED. R. APP. P. 26(a); Murphy v. United States, 634 F.3d 1303, 1307 (11th Cir. 2011) (noting that, when a defendant does not appeal his conviction or sentence, the judgment of conviction becomes final when the time for seeking that review expires). Movant was informed of this time period by Judge Moore during sentencing:

> Mr. Smith, you are now advised that it is your right to appeal from this sentence within 14 days from this date; and a failure to appeal within the 14-day period shall be a waiver of your right of appeal. The government may appeal this sentence.
>
> You are also advised that you are entitled to assistance of a lawyer in taking an appeal, and if you're unable to afford a lawyer one will be provided for you.
>
> If you so request the Clerk of Court will prepare and file a notice of appeal on your behalf.

(CR510-22, Doc. No. 59, p. 13). Movant did not file an appeal (as previously discussed). Thus, he had until September 15, 2012, to file a timely § 2255 motion. 28 U.S.C. § 2255(f)(1). Movant did not execute his § 2255 motion until January 24, 2014, and it is untimely under § 2255(f)(1).

11

The undersigned next addresses whether Movant is entitled to use § 2255(f)(4) as the triggering event for statute of limitations purposes. By Movant's own admissions, he was not diligent in discovering that an appeal had not been filed prior to February 2013 at the earliest. Movant testified that he believed attorney Smith filed an appeal on his behalf, and it was while he was incarcerated at Estill that he began speaking with his fellow inmates, who encouraged him to contact attorney Smith. (Doc. No. 12, pp. 34–35). Movant stated that he then contacted attorney Smith and asked him to send Movant his documents after attorney Smith informed him that he was done with Movant's case. (Id. at p. 35). Movant noted in his affidavit that this Court informed him on February 13, 2013, that no appeal was pending or even filed in his criminal case, and it was at that time he began trying to contact attorney Smith. (Doc. No. 9, pp. 2–3).

The undersigned observes Movant's assertion that it was after he was in Estill that he began speaking with his fellow inmates about pursuing his appeal. However, Movant was incarcerated in Estill from December 11, 2012, through February 25, 2014. (Doc. No. 17-2, p. 3). The very first date Movant made any attempt to learn about his appeal could not have been before December 11, 2012, based on the record before the Court. Movant made no effort up until that time (at the earliest) to learn whether he had an appeal pending, which was more than 15 months after judgment was entered in his criminal case. The undersigned also observes that, if Movant in fact began seeking information on his appeal as early as December 11, 2012, he then waited a month and a half to file a motion for documents, transcripts, and final sentencing dispositions with this Court in Case Number CR510-22. Judge Moore denied this motion on February 13, 2013, by informing Movant that he did not have a pending section 2255 motion

AO 72A
(Rev. 8/82)

entitling him to these documents. (CR510-22, Doc. Nos. 53, 55). According to Movant's testimony, it was on February 13, 2013, nearly 18 months after his sentencing, that he began attempting to contact attorney Smith. Movant has failed to show he pursued his rights diligently, and he is not entitled to the benefit of the statute of limitations period found at § 2255(f)(4).

It must be determined whether Movant is entitled to equitable tolling. A prisoner seeking equitable tolling must establish "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way" which prevented him from timely filing his § 2255 motion. Lawrence v. Florida, 549 U.S. 327, 335 (2007) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Equitable tolling is "an extraordinary remedy that must be applied sparingly[,]" and a prisoner must present a "truly extreme case." Holland v. Florida, 539 F.3d 1334, 1338 (11th Cir. 2008). "'[T]he burden of establishing eligibility for'" this extraordinary remedy "'squarely'" rests with the prisoner. Foley v. United States, 420 F. App'x 941, 942 (11th Cir. 2011) (quoting Outler v. United States, 485 F.3d 1273, 1281 (11th Cir. 2007)). Movant, as noted above, fails to establish that he was pursuing his appellate rights diligently. In addition, Movant also fails to establish that an extraordinary circumstance prevented him from filing an appeal. Movant is not entitled to equitable tolling of the applicable statute of limitations.

### III. Whether Movant was properly sentenced

Movant contends that the United States Supreme Court's decision in Descamps v. United States, \_\_ U.S. \_\_, 133 S. Ct. 2276 (June 20, 2013), is retroactively applicable to cases on collateral review. Movant avers that Descamps invalidated the rationale used to determine that Movant should be sentenced under the ACCA because his

conviction under a non-generic burglary statute no longer qualifies as a violent felony under the ACCA. The Government contends that Movant's 1983 Georgia burglary conviction still qualifies as a generic burglary under the modified categorical approach set out in Descamps.[2]

The ACCA provides, in relevant part:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

As used in this subsection—

the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. §§ 924(e)(1) & (2)(B).

Under the ACCA, a person convicted under 18 U.S.C. § 922(g) is subject to a mandatory minimum sentence of 15 years' imprisonment if he has three prior convictions for a violent felony or serious drug offense, committed on different occasions. 18 U.S.C. § 924(e)(1). Regarding burglary, "[a]s the [ACCA] has been

---

[2] Movant does not challenge the sufficiency of his other prior convictions for ACCA purposes. The undersigned makes no determination regarding the applicability of Descamps to cases on collateral review.

interpreted, a conviction for 'generic burglary' counts as a violent felony, while a conviction for 'non-generic burglary' does not." United States v. Rainer, 616 F.3d 1212, 1213 (11th Cir. 2010), *abrogated on other grounds by* United States v. Howard, 742 F.3d 1334 (11th Cir. 2014). A "generic" burglary is "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599 (1990). A "non-generic" burglary is one that "do[es] not include all of the elements essential to generic burglaries," including burglaries of boats, automobiles, and other non-buildings. Rainer, 616 F.3d at 1214.

"To determine whether a past conviction is for one of those crimes, courts use what has become known as the 'categorical approach': They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime— i.e., the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." Descamps, __ U.S. at __, 133 S. Ct. at 2281. In those instances "when a prior conviction is for violating a so-called 'divisible statute[,]'" courts can use the "'modified categorical approach[.]'" Id. A divisible statute is a statute which "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." Id.

15

"The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." Id.

Movant was convicted of burglary for events which took place in Georgia in 1983. The Georgia burglary statute provided: "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof." O.C.G.A. § 16-7-1(a) (West 1982–88 version).

The Georgia burglary statute is a divisible statute because it contains as elements of the crime entry into a building, which matches an element in the generic offense, and entry into a vehicle and other non-buildings, which matches elements of the non-generic offense. Thus, this Court must adopt the modified categorical approach to determine whether Movant's conviction for burglary under Georgia law qualifies as a violent felony for ACCA purposes. The documents the Government submitted reveal that Smith pled guilty to the felony committing a theft while "remain[ing] within the dwelling of another[.]" (Doc. No. 4-1, pp. 2, 4). Because Movant was convicted of the alternative elements of Georgia's statute which included entry into a building, Movant's conviction for burglary under Georgia law is a qualifying "violent felony" under the ACCA. Movant is not entitled to his requested relief.

AO 72A
(Rev. 8/82)

## IV. Whether Alleyne provides Movant with his requested relief

Movant contends that his sentence under the ACCA is invalidated because his mandatory minimum sentence was increased based on facts not submitted to a jury. Movant also contends that he is entitled to appeal based on Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151 (June 17, 2013). The Government avers that Alleyne offers Movant no entitlement to relief, whether in the context of an appeal or in the context of this section 2255 proceeding.

The Alleyne decision overruled Harris v. United States, 536 U.S. 545 (2002), and holds that facts which increase mandatory minimum sentences must be submitted to a jury. Alleyne, ___ U.S. at ___, 133 S. Ct. at 2163–64. "The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense." Id. at ___, 133 S. Ct. at 2158 (citations omitted). However, the Supreme Court has held that, to enhance a defendant's sentence, a defendant's prior conviction does not have to be alleged in the indictment or proven to a jury beyond a reasonable doubt. Almendarez-Torres v. United States, 523 U.S. 224, 226–27 (1998). In Alleyne, the Supreme Court noted its decision in Almendarez–Torres, and stated that "we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today." ___ U.S. at ___, 133 S. Ct. at 2160 n.1. Movant's assertions are based on the fact that his prior convictions increased his penalty and that the fact of his prior convictions was not presented to a jury. Alleyne does not lend support to his claims in the context of permitting a direct appeal.

AO 72A
(Rev. 8/82)

To the extent Movant wishes for Alleyne to apply to his current motion, the Eleventh Circuit has stated that Alleyne does not apply retroactively to cases on collateral review. In Chester v. Warden, 552 F. App'x 887, 890 (11th Cir. 2014), the petitioner's "only available avenue for collateral relief in a § 2241 petition [was] through § 2255(e)'s savings clause." The Eleventh Circuit stated, "because it is based on the Apprendi[v. New Jersey, 530 U.S. 466 (2000),] rule, Alleyne's rule does not apply retroactively on collateral review." Id. at 891 (citation omitted). The Eleventh Circuit, in considering Alleyne "for the purposes of [ ] direct appeal," stated that, "doing so is not intended to suggest that Alleyne applies retroactively to cases on collateral review. Alleyne was decided in the context of a direct appeal, and the Supreme Court itself has not expressly declared Alleyne to be retroactive on collateral review . . . [a]nd Alleyne has not been made retroactive through any combination of cases that necessarily dictate retroactivity." United States v. Harris, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014) (citation omitted). The decision in Schriro v. Summerlin, 542 U.S. 348 (2004), supports the determination that decisions based upon Apprendi are not retroactively applicable on collateral review. The Supreme Court held in Schriro that the decision in Ring v. Arizona, 536 U.S. 584 (2002)—a case also based upon the principle established in Apprendi—"announced a new procedural rule that does not apply retroactively to cases already final on direct review." 542 U.S. at 358. Thus, Movant is not entitled to his requested relief pursuant to Alleyne in this motion, a collateral proceeding.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Movant's 28 U.S.C. § 2255 motion be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 16th day of September, 2014.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)